**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FUJIFILM HEALTHCARE AMERICAS CORPORATION, a/k/a FUJIFILM HEALTHCARE AMERICANS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. _____ |

## <u>COMPLAINT</u>

Plaintiff FUJIFILM Healthcare Americas Corporation, a/k/a FUJIFILM Healthcare Americans Corporation ("Plaintiff"), by and through undersigned counsel, files this complaint against the United States of America ("Defendant"), for a refund of internal revenue taxes. This case arises out of the wrongful denial by the Internal Revenue Service ("IRS") of Plaintiff's refund claims stemming from net operating loss carrybacks.

### <u>PARTIES</u>

1.      Plaintiff is a healthcare company dedicated to advancing the ability of providers to deliver care through tools such as diagnostic imaging, enterprise imaging, endoscopic imaging, surgical imaging, and in-vitro diagnostics. Plaintiff's principal place of business is in Lexington Massachusetts. Plaintiff's legal name is FUJIFILM Healthcare Americas Corporation. The a/k/a name, FUJIFILM Healthcare Americans Corporation, is included in the caption because it erroneously appears that way in the IRS's records.

2.      Defendant is the United States of America.

1

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1340, and 1346(a)(1), as well as 26 U.S.C. § 7422.

4.     Venue is proper in this Court under 28 U.S.C. §§ 1402(a)(2) and 1391. Plaintiff has its principal place of business in this judicial district.

## PLAINTIFF'S NET OPERATING LOSSES AND REFUND CLAIMS

5.     In the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Congress created a special rule for net operating losses "arising in a taxable year beginning after December 31, 2017, and before January 1, 2021." 26 U.S.C. § 172(b)(1)(D). Under this rule, "such loss shall be a net operating loss carryback to each of the 5 taxable years preceding the taxable year of such loss." *Id.*

6.     Plaintiff incurred net operating losses ("NOLs") in its tax years ending on March 31, 2020, in the amount of $7,505,953, and March, 31 2021, in the amount of $5,444,663. Because both tax years commenced after December 31, 2017, and before January 1, 2021, those losses were eligible for the carryback rules under § 172(b)(1)(D).

7.     On or about April 20, 2022, Plaintiff submitted amended tax returns (Forms 1120-X) for its tax years ending on March 31, 2015, March 31, 2017, March 31, 2018, and March 31, 2019 (the "First Amended Returns").

8.     The First Amended Return for the tax year ending on March 31, 2015 claimed an NOL carryback of $710,369 attributable to the loss year ending on March 31, 2020. As a result of the NOL carryback, Plaintiff claimed a refund of $99,905 for the tax year ending on March 31, 2015. This tax period is not at issue in this Complaint.

9.      The First Amended Return for the tax year ending on March 31, 2017 claimed an NOL carryback of 6,795,884 from the loss attributable to the loss year ending on March 31, 2020. As a result of the NOL carryback, Plaintiff claimed a refund of $996,797 for the tax year ending on March 31, 2017.

10.      The First Amended Return for the tax year ending on March 31, 2018 claimed a minimum tax credit ("MTC") of $330,569 arising out of a recalculation triggered by the carryback of the NOL attributable to the loss year ending on March 31, 2020.

11.      The First Amended Return for the tax year ending on March 31, 2019 claimed an MTC of $226,387 arising out of a recalculation triggered by the carryback of the NOL attributable to the loss year ending on March 31, 2020.

12.      On or about October 26, 2022, Plaintiff submitted a second set of amended returns (Forms 1120-X). These returns (the "Second Amended Returns") related to the same tax years as the First Amended Returns.

13.      The Second Amended Returns corrected certain errors and added in refund claims related to the NOL attributable to the loss year ending on March 31, 2021.

14.      The Second Amended Return for the tax year ending on March 31, 2015 claimed an NOL carryback of $823,517 from the loss attributable to the loss year ending on March 31, 2020. As a result of the NOL carryback, Plaintiff claimed a refund of $116,877 for the tax year ending on March 31, 2015. As noted, this tax period is not at issue in this Complaint, and the requested refund has been received.

15.      The Second Amended Return for the tax year ending on March 31, 2017 claimed an NOL carryback of $7,084,030 from the losses attributable to the loss years ending on March 31, 2020 and March 31, 2021 ($6,682,436 attributable to the former and $401,594 attributable to

the latter). As a result of the NOL carrybacks, Plaintiff claimed a refund of $996,797 for the tax year ending on March 31, 2017.

16.    The Second Amended Return for the tax year ending on March 31, 2018 claimed an NOL carryback of $2,191,757 from the loss attributable to the loss year ending on March 31, 2021. As a result of the NOL carryback, Plaintiff claimed a refund of $332,004 for the tax year ending on March 31, 2018.

17.    The Second Amended Return for the tax year ending on March 31, 2019 claimed a NOL carryback of $1,078,033 from the loss attributable to the loss year ending on March 31, 2021. As a result of that, it claimed a refund of $226,387. It additionally claimed a refundable MTC of $1,714,448 arising out of a recalculation triggered by the carryback of the NOLs attributable to the loss years ending on March 31, 2020 and March 31, 2021.

18.    The Second Amended Returns calculated all refund amounts appropriately except for the refundable MTC for the tax year ending on March 31, 2019. The correct refundable amount for that period is $1,914,346 (of which $889,630 is attributable to the NOL for the loss year ending on March 31, 2020, and $1,024,716 is attributable to the NOL from the loss year ending on March 31, 2021). This leads to a refund claim of $2,140,733 (regular tax refund of $226,387 plus the refundable MTC of $1,914,346) for the tax year ending on March 31, 2019.

19.    The correct MTC calculation for the tax year ending on March 31, 2019 does not substantially vary from the amount claimed on the Second Amended Return for that tax year. Among other considerations, the two calculations are similar in amount and both arise from NOL carrybacks. Plaintiff's refund claim for the tax year ending March 31, 2019 specifically advised the IRS that Plaintiff was "ELECTING TO TAKE 100% REFUNDABLE CREDIT AMOUNT IN

2018 – PER CARES ACT SECTION 2305(b)." The refund claim was sufficient to put the IRS on notice of the basis for the claim and the factual support for it.

20.    On May 17, 2024, Plaintiff submitted a third set of amended returns (Forms 1120-X). These returns (the "Third Amended Returns") related to the tax years ending on March 31, 2017, March 31, 2018, March 31, 2019, and March 31, 2020.

21.    Plaintiff filed the Third Amended Returns in error. Plaintiff did not appreciate at the time of the Third Amended Returns that the Second Amended Returns had been filed.

22.    On July 2, 2024, the IRS issued a Letter 105-C disallowing the refund claims from the Third Amended Returns. The letter stated that "[w]e disallowed your claims for credit for the tax periods" ending on March 31, 2017, March 31, 2018, March 31, 2019, and March 31, 2020.

23.    The letter states that the claims were denied because Plaintiff filed the claims "more than 3 years after you filed your tax return" and "more than 2 years after you paid the tax or balance due." Specifically, the letter indicates that the "last day to file a claim for tax year 2020 was Jan. 13, 2024."

24.    The letter continues: "However, we can process your carryback request from loss year ended Mar. 31, 2021, to taxable year ended Mar. 31, 2017. You will need to correct your Form 1120-X's for Mar. 31, 2018, Mar. 31, 2019, and Mar. 31, 2020, to reflect only the carryback from loss year ended Mar. 31, 2021. This includes your Alternative Tax, and Minimum Tax carryforwards."

25.    However, the relevant claims for refund are the Second Amended Returns, which the letter 105-C did not address, rather than the Third Amended Returns, which were, as noted, filed in error.

26.     Plaintiff has attempted to resolve this issue by filing a protest letter and soliciting assistance from the Taxpayer Advocate Service. To date, these efforts have been unsuccessful.

## COUNT I: TAX YEAR ENDING MARCH 31, 2017

27.     Plaintiff incorporates by reference paragraphs 1–26.

28.     The original Form 1120 return for the tax year ending on March 31, 2017 was timely filed, and liabilities were timely paid.

29.     The original return was filed under the name Hitachi Healthcare Americas Corporation. That entity was subsequently acquired by Plaintiff.

30.     On or about October 26, 2022, Plaintiff filed a refund claim seeking a refund of $996,797 for the tax year ending on March 31, 2017, attributable to an NOL in the loss years ending on March 31, 2020 and March 31, 2021.

31.     The NOLs were properly calculated and carried back in accordance with 26 U.S.C. § 172(b)(1)(D).

32.     The IRS improperly denied the refund claim in a letter dated July 2, 2024. This suit is timely because it was commenced within two years of the date of the IRS's denial.

33.     In the alternative, to the extent that the July 2, 2024 letter did not constitute a denial, more than six months have passed since Plaintiff filed its claim for a refund, and this suit is timely on that basis.

34.     Plaintiff is entitled to a refund of $996,797 for the tax year ending on March 31, 2017, plus interest as allowed by law.

### COUNT II: TAX YEAR ENDING MARCH 31, 2018

35.    Plaintiff incorporates by reference paragraphs 1–26.

36.    The original Form 1120 return for the tax year ending on March 31, 2018 was timely filed, and liabilities were timely paid.

37.    The original return was filed under the name Hitachi Healthcare Americas Corporation. That entity was subsequently acquired by Plaintiff.

38.    On or about October 26, 2022, Plaintiff filed a refund claim seeking a refund of $332,004 for the tax year ending on March 31, 2018, attributable to an NOL in the loss year ending on March 31, 2021.

39.    The NOL was properly calculated and carried back in accordance with 26 U.S.C. § 172(b)(1)(D).

40.    The IRS improperly denied the refund claim in a letter dated July 2, 2024. This suit is timely because it was commenced within two years of the date of the IRS's denial.

41.    In the alternative, to the extent that the July 2, 2024 letter did not constitute a denial, more than six months have passed since Plaintiff filed its claim for a refund, and this suit is timely on that basis.

42.    Plaintiff is entitled to a refund of $332,004 for the tax year ending on March 31, 2018, plus interest as allowed by law.

### COUNT III: TAX YEAR ENDING MARCH 31, 2019

43.    Plaintiff incorporates by reference paragraphs 1–26.

44.    The original Form 1120 return for the tax year ending on March 31, 2019 was timely filed, and liabilities were timely paid.

45.     The original return was filed under the name Hitachi Healthcare Americas Corporation. That entity was subsequently acquired by Plaintiff.

46.     On or about April 20, 2022, Plaintiff filed a refund claim seeking a refund of $1,940,835 for the tax year ending on March 31, 2019, attributable to an NOL in the loss year ending on March 31, 2021 and due to an MTC arising out of a recalculation triggered by the carryback of the NOLs attributable to the loss years ending on March 31, 2020 and March 31, 2021.

47.     The correct refundable amount for that period is $2,140,733. *See supra* ¶ 18.

48.     The IRS improperly denied the refund claim in a letter dated July 2, 2024. This suit is timely because it was commenced within two years of the date of the IRS's denial.

49.     In the alternative, to the extent that the July 2, 2024 letter did not constitute a denial, more than six months have passed since Plaintiff filed its claim for a refund, and this suit is timely on that basis.

50.     Plaintiff is entitled to a refund of $2,142,168 for the tax year ending on March 31, 2019, plus interest as allowed by law.

### JURY DEMAND

51.     Plaintiff demands a jury trial on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant for:

a.  A refund in the amount of $996,797, or such other amount as the Court finds to be refundable, plus interest on that amount as provided by law, for the tax year ending on March 31, 2017;

b.  A refund in the amount of $332,004, or such other amount as the Court finds to be refundable, plus interest on that amount as provided by law, for the tax year ending on March 31, 2018;

c.  A refund in the amount of $2,140,733, or such other amount as the Court finds to be refundable, plus interest on that amount as provided by law, for the tax year ending on March 31, 2019;

d.  Reasonable litigation and administrative costs, including attorneys' fees, as allowed by law, including pursuant to 26 U.S.C. § 7430; and

e.  Such other and further relief as the Court deems just and appropriate.

Dated: July 1, 2026

Respectfully submitted,

*/s/ Neil T. Smith*
Neil T. Smith (BBO# 651157)
Neil.Smith@klgates.com
K&L Gates LLP
1 Congress St.
Boston, MA 02114
Telephone: (617) 261-3100
Facsimile: (617) 261-3175

*/s/ Robert S. Silverblatt*
Robert S. Silverblatt*
Bar Number: DC1020748
K&L Gates LLP
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9132
Facsimile: (202) 778-9100
Rob.Silverblatt@klgates.com
*\*Pro hac vice application forthcoming*

*Counsel for Plaintiff FUJIFILM Healthcare Americas Corporation*

9